# IN THE UNITED STATES BANKRUPTCY
# COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| | : |
| EDWARD F. SAGER, JR. | : |
|       DEBTOR | : BANKRUPTCY NO.  13-14660 SR |
| _____ | : |
| GEORGE P. STASEN, AS GENERAL | : |
|   PARTNER OF MENTOR SPECIAL | : |
|   SITUATION FUND AND INDIVIDUALLY | : |
| | : |
|       PLAINTIFF | : |
|     VS. | : |
| EDWARD F. SAGER, JR. | : |
|       DEFENDANT | : ADVS NO.  13-361 |
| _____ | |

# OPINION

BY:  STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court are Plaintiff's and Defendant's Cross Motions for Summary Judgment in a non-dischargeability action. Argument with respect to the Motions was heard May 14, 2014. For the reasons which follow each Motion will be granted in part and denied in part. As detailed herein, the Plaintiff's request for a determination of non-dischargeability as to a certain $1.05 million judgment entered in his favor on December 2, 2011 in the Court of Common Pleas of Bucks County, Pennsylvania will be denied. The Defendant/Debtor's corresponding cross motion for judgment on that issue will be granted. Conversely, the Plaintiff's request for a determination of non-dischargeability as to a certain $636,537.00 judgment entered in his favor on April 12, 2013 in the Court of Common Pleas of Bucks County, Pennsylvania will be granted, and the

Defendant/Debtor's corresponding cross motion for judgment on that issue will be denied.[1]

*Background*

The present dispute originated several years ago and has had a lengthy history in Pennsylvania's state courts. The voluminous record amassed in the contentious state court proceedings describes in extensive detail the operative facts. That record has been supplemented by discovery taken herein. The Court recounts here those undisputed facts relevant for present purposes, as gleaned from the collective record which the parties have submitted with their competing motions.

By way of abbreviated summary, the parties' controversy relates to an investment venture capital business formed by the Plaintiff George P. Stasen ("Stasen") and the Debtor, Edward J. Sager, Jr. ("Sager"). The business was formed as a General Partnership and later converted to a Limited Partnership called the Mentor Special Situation Fund, L.P. ("the Fund") Stasen and Sager began as co-General Partners of the Fund through equal ownership of a separate General Partnership called Mentor Partners. Pl. Mot., Ex. E, Findings of Fact (F/F) ## 1,2. Apart from whatever seed money Stasen and Sager may have contributed, the two were apparently successful in soliciting over $4 million for the Fund from upwards of 40 limited partners. *Id.*, Ex. F, at 1. Concurrently, the two formed other entities to provide management and consulting services to the Fund. *Id.* at 3.

In or around 2003, Stasen experienced financial problems which compelled his withdrawal as a co-owner of Mentor Partners. *Id.*, Ex. E, F/F #5. Sager then became

---

[1] As this matter involves a request for a declaration of non-dischargeability of a debt, it is within this Court's core jurisdiction. See 28 U.S.C. § 157(b)(2)(I).

the sole general partner of Mentor Partners and assumed sole control over the

operations of the Fund. *Id.* Stasen asserts that both prior to and after this occurrence

Sager engaged in various irregularities managing the Fund's activities. *Id.*, F/F #9.

Stasen's accusations to this end persisted for a period of years. *See id., generally*.

Eventually, in 2006, Stasen and Sager negotiated a global settlement of their

differences which was memorialized in a "Memorandum of Understanding" dated April

25, 2006. *Id.*, F/F # 20.  Among its terms it called for an attorney to follow-up and

immediately draft a document containing the terms and conditions agreed to. *Id.* The

Memorandum of Understanding was drafted by Harry Poulous, a financial consultant.

*Id.*, F/F # 21.  In addition to the Poulous Memorandum, Sager separately handwrote a

shorter Memorandum which recited his agreement to pay a settlement sum of $1.05

million in order to resolve issues with Stasen and others. *Id.*, F/F # 24.

In June of 2006 Sager disavowed the Settlement Agreement and refused to pay

the sums called for thereunder. *Id.*, F/F # 30.  This prompted one of the Fund's Limited

Partners to undertake efforts to remove Sager as General Partner of the Fund and to

replace him with Stasen. *Id.*, Ex. F, at 3.  A vote to that end was taken and it was

approved by a wide margin of the Fund's Limited Partners. *Id.*

Sager refused to acknowledge the vote to remove him, or to relinquish control of

the Fund's operations to Stasen. *Id.*  This led Stasen and other limited partners to file a

civil action in the Bucks County Court of Common Pleas seeking Declaratory Relief,

Injunctive Relief and an Accounting. *Id.*  The State Court, however, directed that a

second vote first take place as to Sager's status in order to assure that proper

procedures were observed. *Id.*  A partnership meeting was held on September 14,

2006 and once again, by a wide margin, the Partners voted to oust Sager and replace

him with Stasen.  *Id.*, Ex. F, at 5.  By order dated October 6, 2006 the State Court

thereupon enjoined Sager from taking any further actions on behalf of the Fund and

directed him to turn over to Stasen all of the Fund's monies and records. *Id.* at 6.  The

Common Pleas Court stayed its October 6, 2006 Order to permit an appeal to the

Pennsylvania Superior Court. Sager appealed the Order. *Id.* at 6-7.  The Common

Pleas Court Order was affirmed by the Superior Court on February 14, 2008. *Id.* ¶ 14.

Moreover, the Superior Court apparently ruled that a stay should never have been

granted in the first place and that Sager should have been removed effective

September 14, 2006. *Id.*

        Although it is referenced, the Superior Court's Opinion does not appear to be part

of the present record, nor does the Common Pleas Court's Order of October 6, 2006.

Within the record, however, is a detailed opinion dated June 25, 2007 written by the

Common Pleas Court trial Judge, David W. Heckler pursuant to Pennsylvania Rule of

Appellate Procedure 1925(a). *Id.*, Ex. F.  In it the Judge amplified upon the bases for his

October 6, 2006 Order granting Injunctive Relief in favor of Stasen. The Opinion is

highly critical of Sager. Overall, the Court accepted the proposition that in 2006 Sager

was abusing the Fund assets.  *Id.* at 11.  The Court also noted childish and intimidating

behavior by Sager at the meeting where he was voted out as General Partner of the

Fund.  *Id.* at 13-14.  It further observed that even after his withdrawal from the

negotiated settlement Sager continued to act in his own interest to damage the Fund

and to perpetuate his position.  *Id.* These wrongful actions, said the Court, only

compounded Sager's misfeasance, which the Court described as a clear and obvious

4

wrong actionable in Court. *Id.* at 17-18. So negatively did the Court view Sager's conduct that, with unusual candor, the Court stated that, upon reflection, it should never have stayed its October 6, 2006 Order.  *Id.* at 21.

Following the Superior Court decision, the Plaintiffs in the Common Pleas Court action returned to that Court to challenge Sager's disavowal of the $1.05 million settlement, and an evidentiary hearing on the at issue was held.[2] Id., Ex. G, Trial Transcript (Tr.).  At this hearing Sager, testifying under oath, claimed that he never intended the agreement of April 25, 2006 to be binding and that he only entered it to "buy time." *Id.*, Tr. 78:19-24.  Moreover, he claimed that in agreeing to all of the various terms and conditions he was acting under "duress." *Id.*, Ex. E ¶ 31.  By Order dated December 2, 2011 the Common Pleas Court: 1) emphatically rejected these arguments; 2) held that a legally binding and enforceable settlement agreement was reached between Stasen and Sager; and 3) ruled that the $1.05 million was due and owing from that date together with interest at the legal rate of 6%.  *Id.*

Certain of the Court's findings of fact and conclusions of law, issued concurrently with its Order, are especially critical of Sager, as follows:

> 32. The Court finds Sager's portrayal of the circumstances surrounding the settlement agreement to be incredible, and rejects his characterization and version of the facts to the extent that they are in anyway inconsistent with this decision. His testimony before the Court was both shocking and appalling for someone who had been trusted to manage other people's money and investments. The Court specifically finds that Sager has engaged in a course of deceit and fraudulent conduct which has been motivated by greed and self-interest, and not duress.

*Id.*, Ex. E ¶ 32

---

[2] Judge Heckler had left the Bucks County Bench by that time and the matter was thereafter presided over by Judge Robert O. Baldi.

> 51. Sager entered into an enforceable agreement to pay
> Stasen $1,050,000.00, which was not the product of duress
> or coercion. Sager's deceit should not and does not, as a
> matter of law, relieve him of the obligation to pay the money;
> this Court concludes he agreed to pay.

*Id.* ¶ 51

In addition to confirming the Settlement Agreement, the Court's December 2, 2011 Order also directed the parties to advise the Court as to whether there remained any further issues for the Court to resolve. *Id.* at 12, second paragraph. There apparently were numerous other areas of disagreement, and this prompted a further evidentiary hearing. *See id.* Of relevance here, the remaining disputes included the propriety of Sager having paid himself management fees in the sum of $636,537.00 between the date the Fund's partners voted to remove him (September 14, 2006), and the date on which the Pennsylvania Superior Court dismissed his appeal of the Common Pleas Court's October 6, 2006 Order (February 14, 2008). The Common Pleas Court ruled against Sager on this issue. In doing so the Court noted that Sager admitted knowing that by refusing to step aside as General Partner of the fund, after being voted out, he was defying the will of the Limited Partners and was in breach of the Partnership Agreement. *Id.*, Ex. H, F/F #10. The Court noted further Sager's own admission that he was not entitled to the $636,537 that he had taken as management fees. *Id.* F/F #11. On April 13, 2013 the Common Pleas Court entered an Order directing Sager to return that sum to the Fund, together with interest at the legal rate of 6% calculated from February 14, 2008.[3] *Id.* at 1.

---

[3] No appeals were taken from the Common Pleas Court's Orders of December 2, 2011 (the $1.05 million judgment) or April 12, 2013 (the $636,537 judgment)

The Common Pleas Court described the Opinion which accompanied its April 12, 2013 Order as a "Final Decision." The Court explained this by saying that the litigation which had produced that order and decision had by then morphed into disputes that went far beyond the issues joined in the original pleadings which prompted the April 2008 decision of the Pennsylvania Superior Court. That being the case, the Court advised the parties that any further grievances among them would have to be dealt with in the Courts via new action(s). *Id.* At present the Fund is in liquidation. *Id.; see also* Def. Resp., Ex. H, Nawn Depo. 17:4-8.

Sager filed this Chapter 7 Bankruptcy case on May 28, 2013. He listed the $1.05 million judgment and the $636,537 judgment as disputed, unsecured business debts. *See* Bankruptcy Schedule F. On June 25, 2013 Stasen filed separate unsecured proofs of claim for both debts. *See* Claims Docket, ##1, 2.

Stasen filed the present adversary proceeding on June 27, 2013. An Amended Complaint was filed on July 3, 2013. An Answer to the Amended Complaint was filed on December 24, 2013. The parties now each seek summary judgment. As noted a hearing on the Motions was held May 14, 2014. Analysis of the two Motions follows.

*Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P. 56"). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

7

2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. at 249-250, 106 S.Ct. at 2511-12.  In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See Halsey v. Pfeiffer*, -- F.3d --, 2014 WL 1622769, at *9 (3rd Cir., April 24, 1993).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.  Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party.  *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511.  Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving

party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

*Discussion*

Stasen seeks a determination that both judgments, i.e., the $1.05 million and the $636,537 judgment are non-dischargeable under 11 U.S.C. § 523(a)(2)(A) – (Fraud and False Pretenses; under 11 U.S.C. § 523(a)(4) – (Fraud or Defalcation While Acting in a Fiduciary Capacity, Embezzlement, or Larceny); and under 11 U.S.C. § 523(a)(6) – (Willful and Malicious Injury).

Stasen bases his request almost entirely on the findings of fact and conclusions of law entered in the Bucks County Court of Common Pleas litigations. In this regard Stasen emphasizes the June 25, 2007 Opinion of Judge Heckler, the December 2, 2011 Order with accompanying Findings of Fact and Conclusions of Law issued by Judge Baldi, and the Final Order and Decision issued by Judge Baldi on April 12, 2013.  Pl. Mot., ¶¶ 9-14. Ironically, Sager relies on the same evidence to support the argument that it is he and not Stasen who is entitled to Summary Judgment with respect to the dischargeability of both debts.  *See* Def. Resp. ¶¶ 8-20.

Addressing first the $1.05 million judgment, the Court finds Sager to have the better part of the argument. In this regard, Sager contends that there was never a finding of fraud against him in the Common Pleas Court. On this point, counsel for Sager argues:

> 11. Despite Plaintiffs' repeated insistence in this adversary proceeding that the December 2011 Baldi Order was a 'finding of fraud', the December 2011 Baldi Order only mentioned the word 'fraud' in two narrow contexts: (a) that Mr. Stasen believed  Sager had filed fraudulent tax returns (See December 2011 Baldi Order, page 2, para. 8), and (b)

9

> that Judge Baldi found that Sager engaged in a course of
> deceit and  fraudulent conduct with respect to the
> circumstances surrounding the settlement agreement (See
> December 2011 Baldi Order, pages 7-8) -- not with respect
> to Sager's actions in managing the Fund prior to the
> Settlement Agreement.

*Id.* ¶11

However, this is inaccurate. Paragraph 8 on page 2 of Judge Baldi's Opinion of

December 2, 2011 reads as follows:

> 8. These "irregularities" included tax fraud. Sager admitted to
> Stasen then, and confirmed in Court, under oath, that he
> engaged in a pattern of behavior involving the filing of false
> tax returns. [citations omitted]

Pl. Mot., Ex. E, F/F # 8

Paragraphs 1 through 33 of the December 2, 2011 Opinion are the Court's

Findings of Fact. As can be seen, rather than stating what Sager claims to be no more

than "Stasen's belief," Paragraph 8 recites the Court's affirmative finding, not only that

Sager engaged in tax fraud, but that Sager himself confirmed as much under oath. The

reference to "fraud and deceit" is less clear, inasmuch as that phrase, which appears in

Finding of Fact # 32, is in the sentence which follows the Court's reference to Sager's

portrayal of the circumstances "surrounding the Settlement Agreement."

> 32. The Court finds Sager's portrayal of the circumstances
> surrounding the settlement agreement to be incredible, and
> rejects his characterization and version of the facts to the
> extent that they are in anyway inconsistent with this decision.
> His testimony before the Court was both shocking and
> appalling for someone who had been trusted to manage
> other people's money and investments. The Court
> specifically finds that Sager has engaged in a course of
> deceit and fraudulent conduct which has been motivated by
> greed and self-interest, and not duress.

*Id.*, Ex. E ¶ 32

The "course of deceit and fraudulent conduct" to which the Court refers <u>may</u>

pertain only to circumstances surrounding the Settlement Agreement, but it is not so

express as Sager would have it. The reference may, as Stasen counters, pertain to

Sager's conduct both from an earlier date and following his renouncing of the parties'

Settlement Agreement.

If the present dispute came down to the question of whether any Court ever

found that Sager had committed fraud before entering into the Settlement Agreement,

or attempted to commit fraud to evade the Settlement Agreement, Sager would clearly

lose the issue. Stasen's dilemma, however, lies not in the fact of Sager having

committed or attempted to commit fraud, but in the Court having found that whatever

Sager's conduct had been, the parties reached a global settlement which put to rest any

claims between them up to that time. The Court's final Finding of Fact, #33, speaks

directly to this:

> 33. This Court specifically finds that there was a dispute
> between the parties involving various matters, and that
> ultimately an agreement was reached, whereby money
> would be paid to satisfy various obligations, to which Stasen
> had an interest, both directly and/or indirectly. Some of the
> matters involved business ventures and commitments made
> by other people which benefitted both Stasen and Sager
> and/or business ventures that they were involved in. As
> business men, their reputations were, and are, connected to
> those various ventures, and as such, it was reasonable and
> appropriate for Stasen to desire and request, as part of a
> global settlement, resolution of issues and claims made by
> third parties who Stasen believes were owed money.
> Payment of the settlement funds prior to the filing of his
> lawsuit would have benefitted both Stasen and Sager.

*Id.* ¶ 33

It is important to note the Court's emphasis that the Settlement Agreement was intended to settle claims against Stasen, as well as Sager, and that both benefitted from the bargain they struck. The Court's conclusions of law which follow, set forth the applicable legal principles which constituted the parties' dealings a legally binding and enforceable settlement. In this respect, the Court specifically found as a matter of law that the Settlement Agreement was <u>not</u> the product of fraud, as follows:

> 39.   A settlement agreement will not be set aside without a clear showing of fraud, duress, or mutual mistake. *Rago v. Nace* 460 A.2d 337,339 (Pa. Super. 1983). This Court finds, both as a fact and as a conclusion of law, that there was no showing of fraud, duress, or mutual mistake.

*Id.*, Conclusion of Law ¶ 39

This ruling binds Stasen as well as Sager. The effect of a Settlement Agreement is to extinguish the asserted cause of action and to fix rights, titles and interests of the respective parties in accordance with the agreement. *Morris v. Gasparao,* 522 F.Supp. 121, 125 (E.D.Pa. 1981) The theories from the trial are no longer pertinent, and the issue of the claims the trial court proceeded upon can no longer be raised because the claims are considered terminated. *Antonieski v. Graphic Enterprises, Inc.*, 1991 WL 1011054 (Pa. Com. Pl.) 22 Phila. Co. Rptr. 623, 630.  These principles are well established as the controlling law of this circuit:

Settlement is a judicially favored manner for terminating litigation. *Petty v. General Accident Fire & Life Assurance Co.*, 365 F.2d 419, 421 (3d Cir. 1966). Moreover, "(a)n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir. 1970);  *Good v. Pennsylvania R. R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967). A trial court before whom a case is pending may enforce a settlement agreement voluntarily entered into by the parties. *Berger v. Grace Line, Inc.,* 343 F.Supp. 755, 756 (E.D.Pa.1972), aff'd, 474 F.2d 1339 (3d Cir. 1973); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 1976); *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). The authority of the trial court to enforce a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the avoidance of costly and time-consuming litigation. *Rosso v. Foodsales, Inc.*, 500 F.Supp. 274, 276 (E.D.Pa.1980).

…

Federal and state courts have held under a great variety of circumstances that a settlement agreement voluntarily entered into cannot be repudiated by either party and will be enforced by the Court. <u>*Kelly v. Greer*</u>, 365 F.2d 669, 671 (3d Cir. 1966), citing *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir. 1962).

When plaintiff voluntarily and knowingly entered into the settlement agreement, his original cause of action was extinguished. In the event a party to a settlement agreement breaches the agreement, the other party is not without a remedy, however, since he may seek enforcement of the terms of the agreement. *Kelly v. Greer, supra*, at 672. The plaintiff in this action is not seeking enforcement of the terms of the agreement.

*Morris v. Gaspero, supra,* 522 F.Supp. at 124-25

The consequence of this is that Stasen now holds only a contract claim, and that

he lacks a legally viable basis to contest the dischargeability of the $1.05 million

judgment under 11 U.S.C. § 523. Accordingly, summary judgment as to this issue will be entered against Stasen and in favor of Sager.

The evidence dictates a different result as to the $636,537 judgment for management fees. As previously discussed, these were monies that Sager took for himself from the Fund between the date his partners voted him out as general partner and the date on which the Pennsylvania Superior Court dismissed his appeal of that issue. Stasen seeks a determination of non-dischargeability as to this debt on the same three bases he pressed in connection with the Settlement Agreement judgment. Stasen has the burden of proof on the question of dischargeability and must meet it by a preponderance of the evidence. *See In re Roemmele*, No. 01-1252, 2011 WL 4804833, at *4 (Bkrtcy.E.D.Pa., Oct. 11, 2011) (explaining that the party seeking an exception to discharge bears the burden of proof); *see also Grogan v. Garner*, 498 U.S. 279, 288-89, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (holding that each element of a non-dischargeability claim must be established by a preponderance of the evidence)

The Court concurs for the most part with Sager's recitation of that which it is necessary for Stasen to prove in order to prevail on his dischargeability challenges. However, while Sager accurately recites the law, he misapplies it to certain of the facts.

### (i)    11 U.S.C. § 523(a)(2)(A)

As to § 523(a)(2)(A), Sager has this to say:

> 119. Mr. Stasen, like any other creditor seeking to establish
> a debt is not dischargeable, has the burden of proving the
> debt stems from fraud by a preponderance of the evidence.
> Grogan v. Garner, 498 U.S. 279, 284 (1991). In the Third
> Circuit, the elements for a claim of fraud under § 523(a)(2)
> require a creditor to prove: 1) the debtor represented a fact,
> opinion, intention, or law;  2) the representation was false; 3)
> the representation was material; 4) the debtor obtained

> money, property, or services through the misrepresentation;
> 5) the debtor knew at the time that the statement was false;
> 6) the debtor intended the creditor to rely on the statement;
> 8) the reliance was justified; 9) the creditor sustained
> damage; and 10) the damages were the proximate result
> of the false representation. [citations omitted]

Def. Resp. ¶119

The Court agrees. The assertion of this ground for non-dischargeability, however, pertains more to the Settlement Agreement judgment than the management fees judgment. To the extent it is pressed in the latter context the Court holds that it fails, inasmuch as the lengthy conjunctive list of elements are not demonstrated on the record. This appears to be mainly because those concerned knew that Sager was taking the disputed fees during the time he was taking them, and nobody assumed, or relied on any representations to the contrary. Stasen's request for a determination of non-dischargeability of the management fees, insofar as it is based on Code § 523(a)(2)(A) will accordingly be denied.

### (ii) 11 U.S.C. §§ 523(a)(4) & & 523(a)(6)

Here the case against Sager is much stronger.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation, while acting in a fiduciary capacity, embezzlement or larceny.  This Code section delineates three separate bases upon which the discharge of a debt is excepted; to wit: 1) fraud or defalcation while acting in a fiduciary capacity; 2) embezzlement; or 3) larceny. The record supports a finding against Sager on all of these three prongs.

Clearest is the first: fraud or defalcation while acting in a fiduciary capacity. To prevail under this prong of § 523(a)(4) a plaintiff must prove that 1) the debtor was

acting in a fiduciary capacity; and 2) while acting in that capacity the Debtor engaged in fraud or defalcation. *Tyson v. Tyson*, 450 B.R. 514, 522 (Bkrtcy.E.D.Pa. 2011)

Under Pennsylvania law there is a fiduciary relationship between partners. *Clement v. Clement*, 436 Pa. 466, 468, 260 A.2d 728, 729 (Pa.1970)  Consistent with this it has been specifically held that as a matter of social policy general partners of a limited partnership owe a fiduciary duty to limited partners. *Alpart v.General Land Partners, Inc.,* 574 F.Supp. 2d 491, 500 (E.D.Pa. 2008), citing *Jarl Investments, L.P. v. Fleck,* 937 A.2d. 1113, 1123 (Pa.Super. 2007)  Also, it is generally recognized that the sole manager of a joint venture's affairs owes fiduciary obligations within the meaning of § 523(a)(4). *See, e.g.*, *Lewis v. Short,* 818 F.2d 693, 695-96 (9th Cir. 1987); *In re Shane*, 140 B.R. 964, 967 (Bkrtcy.N.D.Ohio 1992)

Fraud for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud. *Tyson, supra*, 450 B.R. at 522.

Defalcation for purposes of this section refers to the failure to produce funds entrusted to a fiduciary. On this point the United States Supreme Court held in 2013 that defalcation for purposes of § 523(a)(4) requires a culpable state of mind with a knowledge of or gross recklessness in respect to the improper nature of the relevant fiduciary behavior. The Supreme Court emphasized that the conduct at issue must be intentional, but need not involve bad faith or immoral conduct.  The Court included within the scope of intentional conduct not only conduct that the fiduciary knows is improper, but also reckless conduct of the kind that the criminal law treats as the equivalent. The equivalency to actual knowledge exists if the debtor-fiduciary

consciously disregards or is wilfully blind to a substantial and unjustifiable risk that his conduct will breach a fiduciary duty. *Bullock v. Bank Champaign, N.A.*, 133 S.Ct. 1754, 1759 (2013).

In his response to the Plaintiff's Motion under § 523(a)(4), Sager deals at length with the embezzlement and larceny prongs. Conspicuously absent, however, is any discussion of the fraud or defalcation prong, other than conclusory assertions that this claim lacks merit, is without evidentiary support and is based only on Stasen's puffery and self-serving statements. *See* Def. Resp. ¶¶ 148, 149

The record evidence against Sager, on the other hand, is overwhelming on this prong of § 523(a)(4). To recapitulate, Sager was found by a court of competent jurisdiction to have engaged in tax fraud while in sole control of the Fund's operations. Pl. Mot., Ex. E, F/F #8.  He was found to have knowingly defied the legitimate vote of the partnership to remove him, and to have done so in order to further his own interests and damage the Fund.  *Id.* Ex. F, at 11.  Sued for this conduct, Sager entered into a Settlement Agreement which he then disavowed. The disavowal of the Settlement Agreement was found to be deceitful, fraudulent, and motivated by greed and self-interest. Sager himself admitted fraud in connection with the Settlement Agreement, saying he only entered into it to "buy time." *Id.*, Ex. E, F/F ## 26, 27.  When other frivolous arguments of duress and extortion were rejected, and he was directed to abide by the Settlement Agreement, Sager took an appeal of the ruling which he later acknowledged under oath to be baseless in fact and law. *Id.*, Ex. G., Tr. 78:19-24. During the time the appeal was pending Sager acknowledged taking the $636,537 from

the Fund. Finally Sager testified in open court, under oath, that he was not entitled to

receive that money, but nevertheless took and retained it for himself. *Id.* Ex. H, F/F #11.

Against this backdrop Judge Baldi ordered Sager to return the $636,537 to the

Fund. *Id.* Ex. H. The Court notes that in doing so the Judge considered, but rejected,

Sager's contention that the stay of proceedings entered in connection with Sager's

Superior Court appeal somehow cloaked his conduct with legitimacy, as follows:

> In their final submissions to the Court, Plaintiffs request the
> Court to Order Defendant to return $636,537 in management
> fees acquired after the vote was taken but before the
> Superior Court rendered its Decision. That request is being
> granted, in the Order which accompanies this Decision. The
> Defendant, in its submission, argues that the stay allowed
> the Defendant to remain as the General Partner of the Fund.
> That is true, in part; however, it was in violation of the written
> agreement that created the Fund and provided the authority
> of the General Partner. Under the terms of the Agreement, a
> vote was taken to remove the General Partner; however, the
> General Partner refused to leave in breach of the
> agreement. The General Partner's refusal to step down was
> at his/its own peril.
>
> The "management fees" for this period of time are not simply
> the costs of overseeing a business. This sum of money
> represents a distribution of profit. It is not compensation
> based on an hourly rate for work performed. The term
> "management fee" is a term of art used by promoters of the
> Fund to justify receiving the lion's share of the profits. The
> current General Partner was not able to the over the
> "management" of the Fun and take on the day to day
> operations, until after the Superior Court rendered its
> Decision. The management fees are to be returned to the
> Fund (not to the subsequent General Partner). To the extent
> the Fund owes a distribution to the Defendant, the Fund may
> withhold the distribution to the extent of the amount due for
> the return of management fees, plus interest.

*Id.* Final Decision at (unnumbered) 9

This Court concurs that, for present purposes, Sager cannot use his baseless

appeal as a shield. His above described conduct satisfies the elements of both fraud

and defalcation, while acting in a fiduciary capacity, and by far more than a

preponderance of the evidence. Accordingly, summary judgment on this issue will be

entered against Sager and in favor of Stasen.

In reaching its decision the Court emphasizes that the controlling facts are

undisputed. Reference to any or all of them for presents purposes is neither

"nonchalant," as Sager argues (Def. Resp. ¶ 152), nor inappropriate.  Quite to the

contrary, the undisputed facts described herein are relevant, damaging and dispositive.

In particular, the Court underscores that there is no challenge to the authenticity of the

various exhibits which have been offered or to their content. Further, Sager's own

multiple sworn admissions against interest cannot be challenged.

Depending upon how one views the evidence, grounds for non-dischargeability

have also been made out under either of the other two prongs of § 523(a)(4). *Collier*

discusses the distinction between these two offenses, as follows:

> Embezzlement is the fraudulent appropriation of property by
> a person to whom such property has been entrusted, or into
> whose hands it has lawfully come. It differs from larceny in
> the fact that the original taking of the property was lawful, or
> with the consent of the owner, while in larceny the felonious
> intent must have existed at the time of the taking.
>
> The required elements of embezzlement are: (1)
> appropriation of funds for the debtor's own benefit by
> fraudulent intent or deceit; (2) the deposit of the resulting
> funds in an account accessible only to the debtor; and (3)
> the disbursal or use of those funds without explanation of
> reason or purpose. For purposes of section 523(a)(4) it is
> improper to automatically assume embezzlement has
> occurred merely because property is missing, since it could

be missing simply because of noncompliance with
contractual terms.

Larceny is the fraudulent and wrongful taking and carrying
away of the property of another with intent to convert the
property to the taker's use without the consent of the owner.
As distinguished from embezzlement, the original taking of
the property must be unlawful. For purposes of section
523(a)(4), a bankruptcy court is not bound by the state law
definition of larceny but, rather, may follow federal common
law, which defines larceny as a "felonious taking of an-
other's personal property with intent to convert it or deprive
the owner of same."

In short, section 523(a)(4) excepts from discharge debts
resulting from the fraudulent appropriation of another's
property, whether the appropriation was unlawful at the
outset, and therefore a larceny, or whether the appropriation
took place unlawfully after the property was entrusted to the
debtor's care, and therefore was an embezzlement.

4 *Collier on Bankruptcy* ¶ 523.10[2] (16th ed.)

The only question here is how one views the $636,537 at the time of its unlawful

taking by Sager. If one posits that the monies went first into the Fund's account and

were thereafter taken by Sager, the case for embezzlement would be made out.

Conversely, if one posits that Sager took the funds before they ever made it into the

Fund's account, then the case would be made out for larceny. Either way each would be

a separate proven ground for a determination that the $636,537 is a non-dischargeable

debt.

Turning to Code § 525(a)(6), this  excepts from discharge any debt "for willful and

malicious injury by the Debtor to another entity or to the property of another entity." The

Debtor maintains that the Complaint fails to state a claim for a debt arising out willful

and malicious injury by the Debtor. The Court disagrees.

Subsection § 523(a)(6) provides that "[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This type of claim "generally relates to torts and not to contracts." 4 *Collier on Bankruptcy,* ¶ 523.12[1]. By its terms, it may apply to a broad range of harmful conduct. *Id.* To fall within this exception, the injury must have been both willful *and* malicious. *Id.* ¶ 523.12[2]. The term "willful" refers to a deliberate or intentional injury, not just a deliberate or intentional act that leads to injury. *In re Coley,* 433 B.R. 476, 497 (Bkrtcy.E.D.Pa. 2010) (citing *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). The plaintiff must establish that the debtor "purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially certain that injury will result." *In re Conte,* 33 F.3d 303, 305 (3d Cir.1994). "Malice" refers to actions that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will. 4 *Collier, supra* ¶ 523.12[2]; *see also In re Wooten*, 423 B.R. 108, 130 (Bkrtcy.E.D.Va.2010) (explaining that malice does not mean the same thing for non-dischargeability purposes under § 523(a)(6) as it does in contexts outside of bankruptcy: "In bankruptcy, debtor may act with malice without bearing any subjective ill will toward plaintiff creditor or any specific intent to injure same.")

Here again Sager offers in his defense only conclusory, self-serving assertions. For example:

> 155. No testimony, documentation or other evidence has been elicited or produced in this adversary proceeding that would show that there is any merit whatsoever to the Plaintiffs' position that their claims are non-dischargeable under Section 523(a)(6) of the Bankruptcy Code.

Def. Resp. ¶ 155.

The Court scarcely knows what to make of this baseless contention, given the plethora of testimonial, documentary and other evidence which comprise the record before it. The Court incorporates here its discussion above and concludes that the record items described amply demonstrate a finding of willful and malicious injury sufficient to support a finding of non-dischargeability under § 523(a)(6). On this score the Court particularly emphasizes Sager's own State Court trial testimony of September 11, 2012, wherein he expressly admitted, under oath, that his taking of the "fees" in question was done with the intention to "make sure that the limited partners got no money." Pl. Mot., Ex. G, Tr. 68:24-69:3

*Summary*

Given the lengthy and complicated chronology of this case, the Court ironically finds itself in agreement with Sager's counsel on an unusual point. In the final paragraph to Sager's Response and Cross Motion (¶ 168) counsel writes that the Court has before it a very simple case to consider once the hyperbole is stripped away. This is true. The evidence, however, proves to be a two-edged sword. Despite reprehensible conduct Sager will reap the protection of the Settlement Agreement he fought so hard to evade. The Agreement will result in the dischargeability of the $1.05 million judgment, because Stasen no less than Sager is bound by the Agreement. Conversely, however, Sager's course of conduct unquestionably renders the $636,537 judgment against him non-dischargeable under both § 523(a)(4) and (a)(6).

An appropriate Order accompanies this Opinion, however, a brief discussion as to the relief provided is necessary.

The caption of Stasen's adversary proceeding names as plaintiffs himself, as General Partner of the Fund, and himself individually. The Complaint at Paragraph 1, however, states that the Plaintiffs are also a list of 46 limited partners. This prompted some confusion after Sager sought discovery from certain of the limited partners. Stasen's counsel resisted this claiming that he had no control over the limited partners and essentially denied that he and his law firm in fact represented them individually. This concerns the Court, inasmuch as it is unclear what authority Stasen had from the limited partner plaintiffs to commence this action in their name, individually, as opposed to in a representative capacity. The Court's working assumption is that Stasen, as general partner, is acting 1) in a representative capacity as to the Fund and its membership, 2) on his own behalf individually, and 3) that the identification of the limited partners was designed only to identify the Fund's membership.

The relief granted to Sager; i.e., the determination that the $1.05 million judgment is dischargeable, extends to Stasen in both his representative capacity and individually. It also extends to the limited partners since this judgment of the State Court, although it named Stasen alone, has now been found to be a dischargeable debt, and that determination would now operate to bind the Limited Partners to the same result on this issue, even if the time within which to commence another non-dischargeability action had not long since expired, which it has.

Conversely, the relief granted herein to Stasen; i.e., a determination that the $636,537.00 judgment is non-dischargeable, was specifically awarded to Stasen in his

representative capacity as General Partner of the Fund. Accordingly no relief on that

issue extends past that, either to Stasen, individually, or to the Fund's Limited Partners,

except insofar as the judgment inures to their benefit as partners in the Fund.


By the Court:

_____

Stephen Raslavich
United States Bankruptcy Judge

Dated:  June 5, 2014