# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 7 |
| EDWARD F. SAGER, JR. | : |
| DEBTOR | : BANKRUPTCY NO. 13-14660 SR |
| GEORGE P. STASEN, AS GENERAL PARTNER OF MENTOR SPECIAL SITUATION FUND AND INDIVIDUALLY | : |
| PLAINTIFF | : |
| vs. | : |
| EDWARD F. SAGER, JR. | : |
| DEFENDANT | : ADVS NO. 13-361 |

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

In this adversary proceeding the matter before the Court arises from remand by the District Court of that portion of this Court's Opinion and Order of June 5, 2015 which held that a certain $1.05 million judgment debt owing from the Debtor to the Plaintiffs was discharged in his bankruptcy case. On April 13, 2015 the District Court held that in reaching its conclusion the Court failed to adhere to the controlling tenets of *Archer v. Warner,* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003*),* and *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), which decisions compelled an inquiry into the underlying nature of the subject debt, irrespective of it having been the product of a settlement agreement among the parties. Accordingly, said the District Court, "this issue will be remanded to the Bankruptcy Court so that it can make the

appropriate analysis under 11 U.S.C. § 523(a)(2)(A)." Consistent with that mandate, the Court revisits the issue herein. In doing so, it concludes that the tenets of *Archer* dictate a result contrary to its June 5, 2014 ruling. Accordingly, and for the reasons stated below, summary judgment will be entered in favor of the Plaintiffs and against the Debtor with respect to the non-dischargeability of the debt at issue.

*Discussion*

At the outset the Court incorporates herein the entirety of its Opinion of June 5, 2014 and the entirety of the District Court Opinion of April 13, 2015.This will dispense with the need to recapitulate many of the background facts relevant to the present dispute.

As to the present dispute, the parties have submitted supplemental memoranda going to the question of the proper disposition of Plaintiffs' non-dischargeability complaint under the *Archer/Brown* rule of law. As with virtually every other issue in this litigation, the parties are sharply divided.

The Debtor maintains that the District Court merely "suggested" that this Court did not address the *Archer* decision in its June 5, 2014 Opinion. Further, the Debtor asserts that the Court actually did address *Archer* in determining that the Plaintiff's $1.05 million judgment was dischargeable. Each of these propositions is incorrect.

The District Court stated categorically that *Archer* had not been discussed below and described that omission as an abuse of discretion. That is well more than a suggestion. Moreover, it is undeniable that *Archer* was not, in fact, "discussed," by the Court. The Debtor cited the case in passing with brief discussion, which is a bit ironic

2

since it militates against him. The Plaintiffs on the other hand never mentioned the case, nor did the Court. This was a mistake and there is no getting past that fact.

Turning to *Archer*, the Court adopts the description and holding of the case as detailed in the District Court's April 13, 2015 Opinion:

> In *Archer*, the Archers sold a company they had purchased to the Warners. The Archers subsequently sued the Warners in state court for *inter alia*, fraud in connection with the sale. The parties settled the state court lawsuit and the Archers voluntarily dismissed the suit with prejudice. After the Warners failed to make the first payment under the terms of the settlement agreement, the Archers sued for the payment in state court. The Warners filed for bankruptcy. The Archers asked the Bankruptcy Court to find the debt nondischargeable because it was for money obtained by fraud. The Bankruptcy Court concluded that he debt was dischargeable and the District Court and Fourth Circuit Court of Appeals affirmed.
>
> The Court of Appeals for the Fourth Circuit reasoned that the settlement agreement, releases and promissory note had worked a "kind of novation" and replaced an original potential debt to the Archers for money obtained by fraud with a new debt. The Court of Appeals further reasoned that since the new debt was not for money obtained by fraud, but rather was for money promised in a settlement contract, the debt was dischargeable in bankruptcy. After granting the Archer's petition for certiorari, the Supreme Court reversed. According to the Supreme Court,
>
>> "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt *Ibid,;* accord *Grogan v. Garner,* 498 U.S. 279, 290, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (assuming that the Bankruptcy Court seeks to "permit exception from discharge of all fraud claims creditors have successfully reduced to judgment.") If we substitute the word "settlement" for the word "judgment," the Court's statement describes this case.
>
> Finally, the Court's basic reasoning in *Brown [v. Flesen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ] applies here.
>
> The Court pointed out that the Bankruptcy Code's nondischargeability provision had originally covered "only 'judgments' sounding in fraud." 442 U.S. at 138, 99 S.Ct. 2205, 60 L.Ed.2d 767. Congress later changed the language so that it covered all such " 'liabilities.' " *Ibid.* This change indicated that

3

> "Congress intended the fullest possible inquiry" to ensure that "all debts arising out of" fraud are "excepted from discharge," no matter what their form. *Ibid.;* see also 11 U.S.C. 523(a)(current "any debt" language). Congress also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns "are not directly in issue and neither party has a full incentive to litigate them."*Brown,* 442 U.S. at 134, 99 S.Ct. 2205, 60 L.Ed.2d 767."

*Archer* at 538 U.S. at 320–321.

In rejecting the Fourth Circuit's novation theory, the Supreme Court stated that "we conclude that the Archer's settlement agreement may have worked a kind of novation, but that fact does not bar the Archers from showing that the settlement debt arose out of 'false pretenses, a false representation, or actual fraud' and consequently is nondischargeable, 11 U.S.C. § 523(a)(2)(A)."*Id.* at 323.

The Supreme Court concluded that it made no difference that the debt in *Archer* was part of a settlement agreement whereas the debt in *Brown* originated n a stipulation and consent judgment. According to the Supreme Court "[a] debt embodied in the settlement agreement of a fraud case "arises" no less "out of" the underlying fraud than a debt embodied in a stipulation and consent decree." *Archer,* 538 U.S. a 1321.

*In re Sager*, No. ADV. 13-361, 2015 WL 1650654, at *6-7 (E.D. Pa. Apr. 13, 2015)

In light of the above, the Debtor's defense in the present case is wholly untenable. On this score, the Debtor insists that Judge Baldi's December 2, 2011 Opinion and Order was not a finding of fraud on his part. This contention is baseless and ignores the plain language of the state court decision. Among numerous others, Judge Baldi made the following findings of fact:

> 6. In 2001, Stasen recorded a telephone conversation between himself and Sager.

> 7. In the recorded telephone conversation, Sager admits that he engaged in accounting and tax irregularities.

4

> 8. These "irregularities" included tax fraud. Sager admitted to Stasen then, and confirmed in Court, under oath, that he engaged in a pattern of behavior involving the filing of false tax returns.
>
> 9. As early as 1999 or 2000, Stasen became convinced that Sager was not allocating consulting fee income properly between himself and Stasen; that Sager was not accurately accounting for expenses, and that, as a result, he (Stasen) was being cheated by Sager.
>
> 10. Stasen began to make demands that Sager produce all books and records of their partnership for Stasen and/or Stasen's accountant's review.
>
> 11. No fewer than six such e-mailed or correspondence demands were introduced into evidence spanning from the year 2001 to the year 2006, approximately one such demand per year.
>
> 12. Sager, essentially, ignored these demands.
> . . .
>
> 32. The Court finds Sager's portrayal of the circumstances surrounding the settlement agreement to be incredible, and rejects his characterization and version of the facts to the extent that they are in anyway inconsistent with this decision. His testimony before the Court was both shocking and appalling for someone who had been trusted to manage other people's money and investments. The Court specifically finds that Sager has engaged in a course of deceit and fraudulent conduct which has been motivated by greed and self-interest, and not duress.

*In re Sager*, 2015 WL 1650654, at **2-3

The Court here emphasizes, in particular, above findings of fact Nos. 7 and 8 whereat the state court expressly finds that the Debtor admitted to tax fraud.

Notably, the misconduct which the state court identified included not only the Debtor's pre-settlement fraudulent acts and omissions, but fraudulent actions in connection with the negotiation and memorialization of the Settlement Agreement itself. On the latter point the state court decision included the following findings of facts:

25. Sager confirmed that he agreed to all of the terms and conditions set forth in the Memorandum of Understanding and that this was an accurate recitation of the agreement between the parties.

26. Sager testified that he never intended the agreement to be binding. He only entered into the agreement "because [he] was trying to buy time to settle [his] tax delinquencies" and to somehow get Mr. Gary Bragg, Esquire whom he believed to be his attorney, involved in the matter.

27. Sager testified that he never viewed the terms of his handwritten settlement memorandum to be binding and that he never intended to settle the dispute; he only drafted the memorandum so his attorney, Bragg, would get involved.

28. In Court, Sager confirmed that he agreed to all of the above referenced terms and conditions and the Court finds that he did so with the intent to convince Stasen that an agreement had been reached.

. . .

31. Despite having entered into the agreement, Sager has refused to pay the money agreed upon and asked this Court to find that he was acting under duress and the settlement agreement should be considered unenforceable.

32. The Court finds Sager's portrayal of the circumstances surrounding the settlement agreement to be incredible, and rejects his characterization and version of the facts to the extent that they are in anyway inconsistent with this decision. His testimony before the Court was both shocking and appalling for someone who had been trusted to manage other people's money and investments. The Court specifically finds that Sager has engaged in a course of deceit and fraudulent conduct which has been motivated by greed and self-interest, and not duress.

*In re Sager*, 2015 WL 1650654, at *3

In the face of the state court's findings of fact, the Plaintiffs maintain that a clearer case of non-dischargeability could not be made. They argue further that in applying *Archer* to the facts of this case, the inescapable conclusion must be that Plaintiffs' Claim No. 2 cannot be discharged. The Court is hard pressed to find a flaw in that position. On this score, the record evidence as to the requirements of 11 U.S.C. §

523 (a)(2)(A) is by any measure overwhelming. In this respect it has been observed that:

> When a creditor seeks a determination that he holds a nondischargeable debt under 11 U.S.C. § 523(a), he bears the burden of demonstrating nondischargeability by a preponderance of the evidence. *See, e.g., Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Graham,* 973 F.2d 1089, 1101 (3d Cir.1992). Generally, the provisions of section 523(a) are, as a matter of policy, "strictly construed against creditors and liberally construed in favor of debtors" because of the overriding bankruptcy purpose of granting debtors a fresh start. *In re Lee,* 2000 WL 815928, at *2 (Bankr.E.D.Pa.2000) (quoting *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir.1995)); *see also In re Perkins,* 2000 WL 1010580, at *3 (Bankr.E.D.Pa.2000); *In re Chryst,* 177 B.R. 486, 493 (Bankr.E.D.Pa.1994).

*In re Antonious*, 358 B.R. 172, 181 (Bankr. E.D. Pa. 2006)

> To successfully challenge the dischargeability of debt under section 523(a)(2)(A), the creditor must establish that: (1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made. *See, e.g., Field v. Mans,* 516 U.S. 59, 61, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *In re Ophaug,* 827 F.2d 340, 342 n. 1 (8th Cir.1987); *In re Maurer,* 112 B.R. 710, 712–13 (Bankr.E.D.Pa.1990). In general, this test applies for all three grounds listed in section 523(a)(2)(A) even though the elements for each vary slightly. Thus, a showing of justifiable reliance and causation of loss must be made in order to recover under any component of section 523(a)(2)(A). *See In re Ali,* 321 B.R. 685, 690 (Bankr.W.D.Pa.2005).

*Id. at* 182

As discussed above, there has already been a finding of fraud made against the Debtor by a court of competent jurisdiction. The Settlement Agreement resolved that, but under *Archer* that did not operate as a novation for present purposes. Inasmuch as the underlying nature of the claims resolved clearly involved fraud on the part of the Debtor, the subject claim, under *Archer* is non-dischargeable.

Beyond the foregoing, the court notes that there is also more than ample evidence to find the subject debt non-dischargeable based on false pretenses and the making of false representations.

> . . . a "false pretense" is an "implied misrepresentation or conduct which creates and fosters a false impression, as distinguished from a 'false representation' which is an express misrepresentation." *In re Haining,* 119 B.R. 460, 463–464 (Bankr.D.Del.1990); *see, e.g., In re Hambley,* 329 B.R. 382, 396 (Bankr.E.D.N.Y.2005); *In re Philopulos,* 313 B.R. 271, 281 (Bankr.N.D.Ill.2004). It has also been defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongly induced to extend money or property to the debtor. *See, e.g., In re Barr,* 194 B.R. 1009, 1019 (Bankr.N.D.Ill.1996). A false pretense must be fostered "willfully, knowingly, and by design; it is not the result of inadvertence." *Id.*

*Antonious, supra,* 358 B.R. at 182

As discussed above, the state court made detailed explicit findings that, in order to mislead the Plaintiffs, the Debtor purposely misrepresented his intentions in entering into the Settlement Agreement both during and after the fact. This evidence provides an entirely sufficient and independent basis upon which to declare the subject debt non-dischargeable.[1]

Summary Judgment will accordingly be entered in favor of the Plaintiff/Claimants.

An appropriate order follows.

---

[1] Parenthetically, the Court notes that *Archer* was decided in the Supreme Court by a 7 to 2 majority. In a dissenting Opinion the minority indicated that they would have affirmed the 4th Circuit's determination that a settlement agreement resolved all pre-settlement allegations of fraud. In doing so, however, the dissent noted that "there are no allegations that petitioners were fraudulently induced to execute the settlement agreement or general release. *Archer, supra,* 538 U.S. at 325,123 S.Ct. at 1469, n.1 Here, as discussed, the opposite is true. There are more than just allegations of fraud in connection with the Settlement Agreement itself. The State Court specifically found the Debtor to have been motivated by deceit and fraud in that regard. This case arguably would have passed muster with the dissent. In any event, under the tenets of *Archer* the Plaintiff's' case for the non-dischargeability of Claim No. 2 based on false pretenses, a false representation <u>and</u> actual fraud is clearly established.

By the Court:

_____
Stephen Raslavich
United States Bankruptcy Judge

Dated:  July 29, 2015